# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| JAMES "JAY" MUSLOW, III | CIVIL ACTION NO: 17-CV-01038 |
| VERSUS | JUDGE ELIZABETH FOOTE |
| CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Plaintiff James "Jay" Muslow, III ("Muslow") brings this action under 42 U.S.C. § 1983 and Louisiana tort law to recover damages for the alleged excessive use of force by officers of the Shreveport Police Department ("SPD"). Now pending before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a). [Record Document 22]. Muslow has opposed the instant motion, and Defendants have filed a reply. [Record Documents 30 & 32]. For the reasons discussed below, the motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **GRANTED** as to the official capacity claims against Tyler Kolb ("Kolb"), Daniel Meyers ("Meyers"), and Alan Crump, Chief of Police for the City of Shreveport ("Crump"), and as to the failure to train claims against Crump and the City of Shreveport ("the City"). Summary judgment is **DENIED** without prejudice to refiling as to all remaining claims.

## BACKGROUND

On the evening of September 12, 2016, SPD officers Kolb and Meyers were dispatched to a residence in Shreveport's Highland neighborhood where Muslow and his wife Kelly were allegedly involved in an altercation with the residents of the home. Record Document 22-1, p. 7. Muslow and Kelly left the scene while the officers were present, and no further investigation was

conducted. *Id.* The residents told Kolb that Kelly had a gun and was acting aggressively with it. *Id.*

Kolb and Meyers, along with Officer Jess Camp ("Camp") and Sergeant Jeffrey Brown ("Brown"), were dispatched to another house in an adjacent neighborhood in response to a "shots fired" call less than an hour later. *Id.* Two neighbors told the officers that they heard gunshots coming from inside the house or in the backyard and one neighbor stated that the occupants of the house were known narcotics abusers. *Id.* The officers determined that they needed to search the residence and the backyard to make sure that no one was injured. *Id.* at pp. 7–8. This is known as a "welfare check." *Id.* at 8. As the officers approached the residence, Muslow came out of the front door and began recording them with his cell phone. *Id.* Kolb requested to pat down Muslow to make sure he did not have any weapons. *Id.* After the pat down, Kolb asked Muslow about the location of the gun that his wife Kelly allegedly possessed during the earlier altercation in the Highland neighborhood. *Id.* Muslow stated that there had never been a gun. *Id.* According to Defendants, when Kolb asked Muslow about the location of another person inside the house, Muslow responded, "he's inside, he ain't coming out here and y'all ain't going in there unless you got a warrant." *Id.* Muslow claims that he made this statement in response to one of the officers asking where Muslow's dog was. Record Document 30-3, p. 52. Meyers told Muslow that the officers just wanted to get in the backyard, but Muslow refused them entry. Record Document 22-1, p. 8. Brown stepped towards Muslow, asked him to stand next to Kolb, and informed Muslow that the officers were going in the house. *Id.* Muslow stated repeatedly "you're not going in my house," to which Brown responded, "yeah we are." *Id.*

The parties provide differing accounts of what happened after Brown told Muslow that the officers were going to enter the house. Kolb stated that Muslow stepped into the doorframe of his

house and attempted to block the officers from entering. *Id.* This prompted Brown to grab Muslow's wrist in a "control hold" to escort him away from the door, but Muslow jerked away. *Id.* Kolb then grabbed Muslow around his upper body and brought him to the ground. *Id.* at 8–9. Defendants claim that Muslow aggressively resisted Kolb and continued to attempt to record the events with his cell phone. *Id.* at 9. Camp grabbed Muslow's legs after he saw Muslow kicking. *Id.* The officers instructed Muslow to put his arms behind his back. *Id.* Kolb attempted to pull Muslow's left arm behind his back, but Muslow pulled his arm away. *Id.* Kolb then delivered two or three short, quick strikes to Muslow's facial area. *Id.* Kolb and Meyers were then able to place Muslow in handcuffs. *Id.*

Muslow's version of events is vastly different. Muslow states that he complied with an order from Brown to move away from the front door and onto the front porch near Kolb while the officers entered the house. Record Document 1, ¶ 11. As he was moving toward the corner of his porch and away from his door, Muslow stated, "You are not going into my house." *Id.* Brown replied, "Yes we are . . . sir, listen there were gun shots." *Id.* Muslow said, "I understand." *Id.* Muslow claims that "without further instructions or commands," Kolb grabbed him by the midsection and forced him up against the side of the house. *Id.* Next, Kolb and Meyers "body slammed" him onto the concrete floor of the porch, fracturing his lower left orbital rim and causing him to begin to lose consciousness. *Id.* Kolb then punched Muslow in the face several times with a closed fist, breaking his jaw on both sides and rendering him fully unconscious. *Id.*

Muslow filed the instant lawsuit on August 16, 2017, against the City and Crump, Kolb, and Meyers, in their individual and official capacities. Record Document 1. Muslow alleges that the City and Crump acted with deliberate indifference to his constitutional rights and in violation of 42 U.S.C. § 1983 by (1) maintaining unconstitutional policies, practices, and customs in the

City of Shreveport Police Department[1] and (2) failing to properly train SPD officers. *Id.* at ¶s 14–23. Muslow also alleges that all Defendants are liable to him for the Louisiana state law torts of battery, assault, intentional infliction of emotional distress, and negligent hiring, training, and supervision. Record Document 1, ¶s 24–47.

## **LAW AND ANALYSIS**

### I.   **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23. However, "if the movant bears the burden of proof on an issue, . . . he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not

---

[1] Muslow claims, and Defendants admit, that the Shreveport Police Department is a department of the City of Shreveport. Record Documents 1, ¶ 6; 5, p. 2.

satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

### I.  Official Capacity Claims Against Crump, Kolb, and Meyers

Muslow brings claims against Crump, Kolb, and Meyers in their individual and official capacities. Record Document 1, ¶ 5. An official capacity suit against a municipal officer duplicates a suit against the officer's municipality. *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A district court faced with both claims may dismiss the official capacity claim. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (citing *Flores v. Cameron Cty.*, 92 F.3d 258, 261 (5th Cir. 1996)). Therefore, the official capacity claims against Crump, Kolb, and Meyers are **DISMISSED WITH PREJUDICE** as duplicative of the municipal liability claims against the City.

5

## II. § 1983 Municipal Liability Claims

Title 42, United States Code, Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

To assert a claim for damages under this statute, a plaintiff must demonstrate (1) a deprivation of a right secured by federal law, (2) that occurred under color of state law, and (3) was caused by a state actor. *Victoria W. v. Larpenter,* 369 F.3d 475, 482 (5th Cir. 2004). The Supreme Court has held that municipalities such as the City are "persons" within the meaning of § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, a municipality cannot be sued under § 1983 under a theory of *respondeat superior* for a constitutional tort committed by one of its employees. *Id.* at 691. A municipality is only responsible for a constitutional harm if the execution of one its customs or policies caused, or was the "moving force" of, the injury. *Id.* at 694.

To impose liability on a municipality under § 1983, a plaintiff must prove three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). Requiring a plaintiff to identify an official policy ensures that municipalities will only be held liable for constitutional violations that result from the decisions of government officials whose acts can be fairly attributed to those of the municipality itself. *Bryan Cty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997).

To satisfy the "official policy" element of a *Monell* claim, a plaintiff may either point to a policy statement that was promulgated by an official policymaker or to "a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and

promulgated policy, is so common and well settled as to constitute a custom that fairly represents a municipal policy." *Zarnow v. City of Wichita Falls, Tex.,* 614 F.3d 161, 169 (5th Cir. 2010) (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984)). To establish the existence of a custom or unofficial policy, a plaintiff must allege that the unconstitutional conduct occurred in cases other than his own or, in rare circumstances, that a final policymaker took a single unconstitutional action. *Zarnow,* 614 F.3d at 169. "A customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski*, 237 F.3d at 581.

The "policymaker" element of municipal liability requires that either actual or constructive knowledge of the custom be attributable to the municipality's governing body or to an official to whom a governing body has delegated final policy-making authority. *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Webster*, 735 F.2d at 842). Finally, "there must be a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 580. In other words, the policy must be the "moving force" behind the injury. *Id.* Without this high threshold of proof, "municipal liability collapses into respondeat superior liability." *Id.* (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998)).

**A. Failure to Discipline**

1. Arguments of the Parties

Muslow alleges that, at all relevant times, Kolb and Meyers were acting pursuant to an "expressly adopted official policy or a longstanding practice or custom of" SPD. Record Document 1, ¶ 19. Muslow claims that the SPD, together with other City of Shreveport policymakers and supervisors, maintained the following unconstitutional customs, practices, and/or policies:

(a) Providing inadequate training regarding the use of force;

(b) Providing inadequate training regarding how to intervene when a fellow officer is using excessive force;

7

(c) Employing and retaining as police officers individuals, such as Kolb and Meyers, who the City knew or reasonably should have known had "dangerous propensities" for using excessive force in conducting their official duties;

(d) Inadequately supervising, training, controlling, assigning, and disciplining police officers, including Defendants Kolb and Meyers, who the City knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits; and

(e) Maintaining a policy of inaction and an attitude of indifference toward the known actions of employees of SPD, including Kolb and Meyers, including failing to discipline, retrain, investigate, and terminate officers who participate in such behavior.

*Id.* at ¶ 20. According to Muslow, the City "condoned, tolerated[,] and through its own actions or inactions thereby ratified such policies" and acted with deliberate indifference to the foreseeable effects of those policies: violations of Muslow's Fourth, Fifth, Eighth, and Fourteenth Amendment rights, along with severe physical and emotional injuries. *Id.* at ¶s 21–22.

The Court views items (a) and (b) on this list of unconstitutional policies as duplicative of Muslow's failure to train claims and they will be analyzed in the next section. To the extent that item (c) alleges that the City should be liable for hiring officers with dangerous propensities for using excessive force, Muslow has not made any other reference to or presented any evidence regarding the City's hiring practices, and such a claim cannot survive the instant motion for summary judgment. The remainder of Muslow's policy claims convey the same idea: that the City failed to respond appropriately once it had actual or constructive knowledge that certain police officers had "dangerous propensities" for using excessive force when conducting their official duties. The Court finds that these various claims can be grouped together as claims against the City for a failure to discipline police officers or for inadequate officer discipline.

The only evidence Muslow offers that could support his *Monell* claim is Kolb's deposition testimony. During his deposition, Kolb admitted that multiple complaints had been filed against

him with the Shreveport Police Internal Affairs Division. Record Document 30-2, pp. 16–17. He did not know how many complaints had been filed. *Id.* at 17. At least some of those complaints involved the use of force. *Id.* Kolb stated that he was subject to investigation because of those complaints but was never disciplined in relation to them. *Id.* Kolb also stated that there were four civil lawsuits, including the case at hand, pending against him for the excessive use of force. *Id.* at 18. Kolb admitted that he punched the plaintiffs of the other three lawsuits in the face. *Id.* at 21–22. Although his opposition does not express this argument clearly, Muslow appears to be alleging (1) that SPD failed to discipline Kolb after multiple excessive force complaints and lawsuits had been filed against him and (2) that SPD's failure to discipline was representative of a custom that "fairly represents municipal policy" for which the City should be held liable under § 1983. *See* Record Document 30-1, pp. 4–5; *Zarnow*, 614 F.3d at 169.

2. Applicable Law

Instead of pointing to any official policy, Muslow seeks to hold the City liable for unofficial policies that he claims existed within SPD. The Fifth Circuit has held that municipal liability only results from an unofficial policy or pattern when that pattern has "occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009). "A pattern requires similarity, specificity, and sufficiently numerous prior incidents." *Id.*

In *Piotrowski v. City of Houston*, the Fifth Circuit acknowledged that a municipal policy of inadequate officer discipline would be unconstitutional if it was pursued with deliberate indifference towards the constitutional rights of citizens. 237 F.3d at 581. The court stated that one

indication of the existence of such a policy could be a "purely formalistic investigation in which little evidence was taken, the file was bare, and the conclusions of the investigator were perfunctory." *Id.* at 582. The court declined to find that a policy of inadequate investigation was present in *Piotrowski* because the record showed that the complaints against the officers in question had been thoroughly investigated and, more importantly, because the plaintiff offered no evidence of complaints against the officers other than her own. *Id.* The court opined that, without demonstrating a pattern of abuses, it is "nearly impossible" to hold a municipality liable for lax disciplinary policy. *Id.*

This case involves multiple complaints filed against a single officer. The United States District Court for the Eastern District of Louisiana has denied a municipality's motion for summary judgment under similar facts in at least two cases. In *Hayward v. City of New Orleans*, the plaintiff provided evidence showing that one of the police officers that she was suing for the excessive use of force had been the subject of fourteen internal complaints and seven lawsuits in a nine-year period. No. 02-3532, 2004 WL 258116 at *5 (E.D. La. Feb. 12, 2004). Thirteen of the internal complaints involved "abuse-type" allegations and most of them were withdrawn, not sustained, or dismissed. *Id.* The plaintiff alleged that those complaints were based on sufficient evidence but were deliberately not pursued by police supervisors during their investigations. *Id.* The plaintiff also provided strong evidence showing that police supervisors thought the internal investigation process was inadequate. *Id.* The plaintiff argued that the city's inaction, after repeated complaints, "constituted an official policy of deliberate indifference to constitutional rights under *Monell*." *Id.* at 6. The district court found that questions of fact existed as to whether city officials had notice of the abuse complaints against the officer, whether city officials were deliberately

indifferent to those complaints, and whether the city's failure to train or discipline the officer was the moving force behind the plaintiff's injuries. *Id.* at 7.

In *Hegeman v. Harrison*, the plaintiff alleged that the City of New Orleans and the city's superintendent failed to adequately discipline the use of force by city police officers. No. 18-613, 2019 WL 1277523 at *12 (E.D. La. Mar. 20, 2019). In support of this claim, the plaintiff pointed to employment records showing that, in an eight-year period, eleven use-of-force complaints were brought against one of the officers she accused of using excessive force against her. *Id.* The plaintiff also provided evidence showing that the New Orleans Police Department received more than 8,400 complaints between the years 2013 and 2017, and over 200 of those complaints concerned the use of unauthorized force. *Id.*

The city argued that the number of prior use-of-force complaints did not account for those that were "unfounded" and noted that none of the investigations into the complaints filed against the officer involved in the plaintiff's case had resulted in discipline or a violation of a departmental policy. *Id.* The court rejected this argument, pointing to a previous Fifth Circuit case that rejected similar reasoning. *Id.* (citing *Peterson*, 588 F.3d at 852 ("[T]hat the department itself vaguely ruled most of its complaints 'not sustained' or 'unfounded' is no assurance that these investigations exonerate the City. To the contrary, that only four of the 27 complaints were 'sustained' after investigation may tilt in [the plaintiff's] favor.")). Citing *Hayward*, the court held that the amount of use-of-force complaints against the individual officer, and the New Orleans Police Department as a whole, created a factual issue as to whether the city's policymakers had notice of the complaints, whether the city's investigation process was adequate, and whether the city's failure to discipline the individual officer was the "moving force" behind the plaintiff's injuries. *Id.*

11

3. <u>Analysis</u>

In support of his failure to discipline claims, Muslow presents facts of a similar type to the facts presented by the plaintiffs in *Hayward* and *Hegeman*. However, unlike the plaintiffs in those cases, Muslow provides no evidence showing the number of internal complaints filed against Kolb, when those complaints were filed, or any details about the investigations that took place as a result of those complaints. Muslow claims that Kolb's inability to remember how many internal complaints have been filed against him indicates that a large number of complaints exist[2] but this is not a reasonable inference that the Court can make in Muslow's favor. Despite these shortcomings, Kolb's deposition testimony does establish that: 1) more than one complaint has been filed against him for his conduct as an SPD officer; 2) some of those complaints involved the excessive use of force; 3) he was investigated by the Internal Affairs Bureau for some of those complaints; 4) he has provided statements in relation to those investigations; and 5) he has never been disciplined in connection with those complaints. Record Document 30-2, pp. 16–17.

The existence of four civil lawsuits against Kolb, including this one, involving similar conduct is also notable. *See* Record Document 30-2, pp. 16–17. In his deposition, Kolb admits to punching the three other plaintiffs in the face. *Id.* at 21–22. Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the fact that all three of the plaintiffs in those lawsuits allege that their interactions with Kolb occurred in 2016, the same year as the incident in this case. *See* Complaint at ¶ 9, *Konrad v. Kolb, et al.*, No. 5:17-cv-00291 (W.D. La. Feb. 17, 2017); Complaint at ¶ 6, *Brock v. Smith, et al.*, No. 5:17-cv-00737 (W.D. La. June 7, 2017);[3] and Complaint at ¶ 11,

---

[2] "Officer Kolb testified that he had multiple excessive use of force complaints filed with the Shreveport Police Internal Affairs Division. So many that he wasn't sure how many complaints had been investigated." Record Document 30-1, p. 4.

[3] This case has settled and is now closed. Record Document 30.

*Tucker v. City of Shreveport, et al.*, No. 5:17-cv-01485 (W.D. La. Nov. 13, 2017). Moreover, two of the alleged incidents occurred in February and June of 2016, several months before Muslow's encounter with Kolb in September of 2016. *Konrad* Complaint at ¶ 9; *Brock* Complaint at ¶ 6. These facts raise questions as to what knowledge the City had about Kolb's behavior at the time the events in this case took place and as to whether the City acted with deliberate indifference to the constitutional rights of its citizens by failing to discipline Kolb. Therefore, the Court is disinclined to grant summary judgment under these facts. However, the Court finds the evidence presented by Muslow, as is, to be insufficient to survive summary judgment. For these reasons, the Court will re-open discovery on a limited basis as to this claim only. The parties have ninety (90) days from the issuance of this ruling to conduct limited discovery only as to Muslow's failure to discipline claim against the City.

  **B.**   **Failure to Train**

    1.   <u>Arguments of the Parties</u>

Muslow alleges that the City acted with deliberate indifference to his constitutional rights by failing to train Kolb and Meyers regarding:

(1) the appropriate use of force and when that force is justifiable in carrying out their duties as police officers;

(2) their duties as police officers to refrain from using excessive force against citizens in carrying out their duties as police officers; and

(3) their constitutional duties as police officers to respect a person's right to be free from unlawful assault and battery.

Record Document 1, ¶ 15. Muslow states that those alleged failures to train caused violations of his Fourth and Fourteenth Amendment rights under the United States Constitution. *Id.* at ¶ 16.

  In their motion for summary judgment, Defendants argue that Muslow has not provided any evidence that any official acted with deliberate indifference or knew that an inadequacy of

13

SPD's training program was likely to result in violations of the constitutional rights of citizens. Record Document 22-1, pp. 23–24. Defendants state that both Kolb and Meyers are certified by the Louisiana Peace Officer Standards and Training Council ("P.O.S.T."), which mandates 360 course hours, including training on the reasonable use of force, and are required to undergo additional training during the academy, and forty additional hours of retraining per year. *Id.* at 24. Defendants contend that Muslow "cannot reasonably argue that this training is inadequate." *Id.*

In his opposition, Muslow responds that his arrest was effectuated in a manner condoned by the City. Record Document 30-1, p. 8. According to Muslow, the City's deliberate indifference to the behavior of Kolb and Meyers "led to a policy of the police to behave inconsistent with reasonable police standards." *Id.* Muslow complains that Kolb did not use pressure control techniques or "less aggressive" measures to effectuate the arrest. *Id.* Finally Muslow argues that Kolb used his size and weight to bring suspects into compliance but received no instruction on how to "limit the devastating effect of his size and weight when aggressively handling a citizen." *Id.*

   2.   Applicable Law

"In limited circumstances, a local government's decision not to train employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The standard that applies to a failure to train claim is the same as the standard for municipal liability. *Valle*, 613 F.3d at 544. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. To establish a claim for failure to train, a plaintiff must demonstrate: (1) inadequate training procedures; (2) that inadequate training caused a violation of the plaintiff's constitutional rights; and (3) the deliberate indifference of

municipal policymakers. *Pineda v. City of Hous.*, 291 F.3d 325, 331–32 (5th Cir. 2002). Furthermore, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, *Ohio v. Harris*, 489 U.S. 378, 388 (1989).

Deliberate indifference requires actual or constructive notice that a particular omission in a training program would cause city employees to violate citizens' constitutional rights, yet the municipality nevertheless chooses to retain that program. *Connick*, 563 U.S. at 61. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference. *Id.* Furthermore, for a municipality to be liable for a failure to train or inadequate training of its employees, a plaintiff must allege with specificity how a particular training program is defective. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).

3. Analysis

The Court finds that Muslow's failure to train claims cannot survive summary judgment because he fails to establish the existence of inadequate training procedures within the SPD. First, assuming *arguendo* that Muslow has shown that training Kolb to use force in relation to his physical size would have prevented Muslow's injuries, this is not sufficient to maintain a failure to train claim. Muslow cannot prevail by proving that his injury could have been avoided if an officer had more or better training. *City of Canton*, 489 U.S. at 391. Second, Muslow's vague claim that Kolb and Meyers were not properly trained in the appropriate use of force fails to allege with specificity how the City's police officer training program is defective. *Roberts*, 397 F.3d at 293.

15

The Court cannot hold a municipality liable for a failure to train based on such a generalized, boilerplate allegation.

Third, Muslow has failed to dispute the evidence provided by Defendants showing that Kolb and Meyers were extensively trained in the proper use of force. The City of Shreveport has a comprehensive use of force policy. Record Document 22-4, pp. 106–09; *See Roberts*, 397 F.3d at 294. Both Kolb and Meyers received certificates showing that they completed several different types of training, including training in defensive tactics, and that they completed a "Certified Basic Training Course" at the Shreveport Police Department Regional Academy. Record Document 22-4, pp. 112–24. Kolb stated in an affidavit that he was certified by P.O.S.T. after completing 360 course hours, including classroom and physical instruction on the use of force. *Id.* at 38. He completed four months of on-the-job training by riding with other officers before he was allowed to patrol on his own. *Id.* at 38–39. Meyers testified that he underwent these training programs as well. *Id.* at 43–45. Furthermore, Kolb and Meyers both testified that they are required to attend forty hours of retraining per year. *Id.* at 39 & 46. Muslow provides no evidence to dispute the adequacy of these training methods other than his own injuries. *See Roberts*, 397 F.3d at 294.

Because Muslow cannot establish a genuine issue of material fact as to whether the SPD's training procedures were inadequate, he also cannot demonstrate that inadequate training procedures caused a violation of his constitutional rights or that City officials were deliberately indifferent to the known consequences of those inadequate training procedures. *See Pineda*, 291 F.3d at 331–32. It is well known that deliberate indifference is a stringent standard of fault, "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cty.*, 520 U.S. at 410. Muslow has provided no proof that meets this stringent standard. Defendants have shown that there is no genuine dispute of material fact regarding Muslow's failure

to train claims and Muslow has failed to go beyond the pleadings and designate specific facts for support to show that there is a genuine issue for trial. *See Little*, 37 F.3d at 1075. Therefore, Muslow's failure to train claims are **DISMISSED WITH PREJUDICE**.

### III. Individual Capacity Claims Against Crump

Crump's only involvement in the conduct forming the basis of this complaint is in his role as Kolb's and Meyer's supervisor. A § 1983 claim for supervisory liability against Crump can only arise from his alleged failure to train or supervise SPD officers. *Roberts*, 397 F.3d at 292. The Court has dismissed the failure to train claims against the City and therefore Muslow's failure to train claims against Crump are also **DISMISSED WITH PREJUDICE**. *See* Record Document 1, ¶ 15. However, the Court has not dismissed Muslow's claims against the City for maintaining unconstitutional policies and practices, referred to in this ruling as failure to discipline claims. One of Muslow's allegations in that category is a claim for inadequate supervision. *Id.* at ¶ 20. Because that claim has not been dismissed against the City, it will not be dismissed against Crump.

### IV. Fourth Amendment Claims

Muslow's opposition to Defendants' motion for summary judgment argues that Kolb and Meyers should be held liable for the excessive use of force in violation of the Fourth Amendment. Record Document 30-1, pp. 5–7. However, after a careful review of the complaint, the Court finds that Muslow did not allege a Fourth Amendment violation against Kolb or Meyers in their individual capacities. *See* Record Document 1. The complaint contains six counts, two are *Monell* claims and the other four are state law tort claims.[4] *Id.* at ¶s 14–46. Although an underlying

---

[4] The first paragraph of the complaint states that Muslow's claim is brought pursuant to "42 U.S.C. §§ 1983, 1988, the Fourth and Fourteenth Amendments to the United States Constitution, Louisiana Constitution Article 1, §§ 2, 3, 5, 25 and Louisiana Civil Code Article 2315." Record Document 1, ¶ 1. The Louisiana Constitution is not referenced again in the complaint. *Id.*

17

constitutional violation is a necessary requirement of a *Monell* claim, the Court does not read those sections of the complaint to assert separate, individual liability against Kolb and Meyers for violations of the Fourth Amendment.

Fifth Circuit case law provides that when a claim is raised for the first time in response to a motion for summary judgment, the district court should construe the claim as a motion to amend the complaint under Federal Rule of Civil Procedure 15(a). *Riley v. School Bd. Union Parish*, 379 F. App'x 335, 341 (5th Cir. 2010). Rule 15(a)(2) provides that courts should freely grant leave to amend when justice so requires. Therefore, the Court gives Muslow until **Friday, July 12, 2019**, to amend his complaint to include a claim for excessive force in violation of the Fourth Amendment against Kolb and Meyers in their individual capacities.

## V.     State Law Claims

Defendants argue that Muslow's state law claims for assault, battery, and intentional infliction of emotional distress should be dismissed. Record Document 22-1, pp. 11 & 25.[5] The Court will defer ruling on the state law claims at this time. If the Court dismisses Muslow's two remaining federal law claims, it will decline to exercise jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c). If the Court finds that Muslow's remaining federal law claims should survive until trial, it will rule on the merits of the state law claims if and when Defendants renew their challenges to those claims on summary judgment.

## CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment [Record Document 22] is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** as to the

---

[5] Defendants' motion does not mention Muslow's claim for negligent hiring, training, and supervision under Louisiana law.

official capacity claims against Kolb, Meyers, and Crump, and as to the failure to train claim against Crump and the City. These claims are **DISMISSED WITH PREJUDICE**. Summary judgment is **DENIED** without prejudice as to all remaining claims.

**IT IS ORDERED** that Muslow has thirty (30) days to file an amended complaint to assert excessive force claims against Kolb and Meyers in their individual capacities, if he so chooses. The deadline to file an amended complaint is **Friday, July 12, 2019**.

**IT IS FURTHER ORDERED** that the parties have ninety (90) days from the issuance of this ruling to conduct limited discovery only as to Muslow's failure to discipline claim against the City. The deadline to complete this limited discovery is **Tuesday, September 10, 2019**.

**IT IS FURTHER ORDERED** that the re-opening of discovery and the potential filing of an amended complaint necessitates a new dispositive motion deadline. The deadline for the parties to file a dispositive motion is **Thursday, October 10, 2019**.

**IT IS FURTHER ORDERED** that the current scheduling order in this matter, including the trial date, is hereby **UPSET**. The Court will hold a telephone status conference to select a new trial date after any dispositive motions have been resolved.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this ___12th___ day of June, 2019.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE